IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Magna International, Inc.,                                Case No. 3:08CV427

            Plaintiff

    v.                                                              ORDER

Deco Plas, Inc.,

            Defendant

       This is a trademark infringement case brought by plaintiff Magna International, Inc. (Magna) against defendant Deco Plas, Inc. (DPI). Plaintiff alleges that defendant is using the trademark "Deco Plas" in violation of plaintiff's rights under the Lanham Act, 15 U.S.C. § 1051 *et seq*. Defendant counterclaims that under common law plaintiff is infringing defendant's trademark.

       Jurisdiction is proper under 15 U.S.C. § 1121 and 28 U.S.C. § 1338.

       Pending is plaintiff's motion for partial summary judgment on the issue of infringement [Doc. 32]. For the reasons discussed below, the motion shall be granted.

## Background

       Magna is a Canadian corporation. Decoplas, S.A. de C.V., a wholly owned subsidiary of Magna, manufactures automotive components in Mexico and sells them in the United States.

Magna owns United States Trademark Registration No. 3,200,133 for the trademark "DECOPLAS." Magna filed a trademark application on August 12, 2005, and received the trademark on January 23, 2007. The trademark registration is for "automotive parts, namely rocker panels, wheel flares, automotive exterior body facias, namely body side cladding and injected molded plastic bumper fascias, in Class 12." [Doc. 1-3].

Decoplas, S.A. de C.V. places the trademark on automotive parts that it later sells in the United States.

Magna asserted in its trademark application that it first used the trademark in 1997, and first used it in interstate commerce in 2004. Invoices show Decoplas, S.A. de C.V. shipped goods to the United States as early as 1998.

DPI is an Ohio company formed in 2005. DPI registered the name "Deco Plas, Inc" with the Ohio Secretary of State on March 7, 2005, when it incorporated. Before its incorporation, DPI entered into a contract on February 11, 2005, with C.K. Technologies. DPI also developed its website on March 2, 2005. DPI registered with the United States Treasury Department and obtained a federal taxpayer identification number from the Internal Revenue Service in February, 2005.

DPI decorates and markets plastic parts for use primarily in the automotive and consumer electronics industries. DPI also states in its counterclaim that it markets and manufactures goods for the automotive industry. DPI uses the name "Deco Plas, Inc." on all shipping labels and in a brochure and video.

Magna brought suit alleging trademark infringement and false designation of origin. DPI counterclaimed, alleging that *plaintiff* was infringing *defendant's* copyright.

2

## Standard of Review

A party is entitled to summary judgment on motion under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, I accept the opponent's evidence as true and construe all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc*., 504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact. *Celotex*, *supra*, 477 U.S. at 323.

## Discussion

Plaintiff seeks summary judgment on the issue of infringement. Defendant argues that summary judgment is precluded because: 1) it is not infringing; and 2) there is no likelihood of confusion.

I first examine whether plaintiff can make out a case of infringement, and then turn to the asserted defenses.

**I. Infringement**

To prevail on a trademark infringement claim, plaintiff must show: 1) ownership of a valid, protectable trademark; 2) defendant's use of the mark in interstate commerce without the registrant's consent; and 3) a likelihood of confusion. *E.g.*, *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009). Because defendant does not contest use of the mark, I address only, first, ownership of the mark and then likelihood of confusion.[1]

## A. Ownership

Plaintiff argues the certificate of trademark registration issued January 23, 2007, establishes its ownership of the trademark "DECOPLAS." Plaintiff additionally contends it has used the trademark in interstate commerce since 1997.

Defendant argues plaintiff's registration is invalid because it is fraudulent, and that defendant, in fact, has the rights to the name "Deco Plas, Inc." because it used the name first in certain geographical areas.

A basic principle of trademark law is that a trademark ownership "is not acquired by federal or state registration. Rather, ownership flows only from prior appropriation and actual use in the market." *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.3d 1100, 1105 (6th Cir. 1991); *see also* 2 McCarthy, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 16:1 (4th ed. 2009) (McCarthy).

"The first to use a mark in the sale of goods or services is the 'senior user' of the mark and gains common law rights to use the mark in the geographic area in which the mark is used." *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 249 F.3d 564, 572 (6th Cir. 2001) (*Allard II*); *see*

---

[1] Plaintiff submits copies of defendant's web page, advertising material, and business documents to show defendant has used the trademark. These documents show defendant markets itself as "Deco Plas, Inc.," and defendant does not dispute its use of that name.

5

*also* 5 McCarthy, *supra*, § 26:1 (defining "senior user" as "the first seller to adopt and use a mark in the United States"). The senior user has the right to enjoin "junior users" from using "confusingly similar marks in the same industry and market or within the senior user's natural zone of expansion." *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999).

The Lanham Act protects both registered and unregistered trademarks. *See, e.g.*, *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).

Receipt of a registered trademark creates a rebuttable presumption of valid trademark ownership. 15 U.S.C § 1115(a) (stating that registration is "prima facie evidence of the validity of the registered mark and of the registration of the mark and of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark"); *id.* § 1057(b) (same); *see also Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 513 (6th Cir. 2007).

Federal registration constitutes constructive use of the mark and has the same legal effect as actual use. *Allard II*, *supra*, 249 F.3d at 572. "In the typical case in which a senior user applies for the federal registration, '[c]onstructive use will fix a registrant's *nationwide priority rights* in a mark from the filing of its application for registration.'" *Id.* (quoting 5 McCarthy, *supra*, § 26:38) (emphasis added).

DPI does not contest that Magna began using the name Deco Plas in the United States in1998, at least seven years prior to DPI's first use.[2] Magn is thus the "senior user" of the mark. 5 McCarthy, *supra*, § 26:1.

---

[2] I also note that plaintiff asserted, in its trademark application, that it first used the mark in interstate commerce in 2004. Invoices submitted, however, show that plaintiff used the name "Deco Plas, S.A. de C.V." in shipping goods to the United States in 1998. Either way, plaintiff's use is senior to defendant's use.

Plaintiff here having submitted its federal trademark registration, *see* Doc. 1-3, and has shown that it is the senior user of the trademark; the burden therefore shifts to defendant to prove any rights in the Deco Plas mark to which plaintiff's federal registration was subject. *See* 15 U.S.C. § 1115(a); *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 356 (6th Cir. 1998) (*Allard I*).

Plaintiff has therefore demonstrated ownership of the trademark.

## B. Likelihood of Confusion[3]

Plaintiff argues: 1) defendant admitted facts in its counterclaim that demonstrate a likelihood of confusion; and 2) it has shown a likelihood of confusion in this case.

Defendant contends in opposition that there can be no likelihood of confusion because: 1) plaintiff's mark is not strong; 2) the goods are not sufficiently related; 3) the geographical scopes are different; 4) there is no actual confusion; 5) the relevant consumers are sophisticated; and 6) it had no intent to infringe.

### 1. Admissions

Preliminarily, plaintiff points to several inconsistencies between defendant's statements in its counterclaim and its later representations. These include whether: 1) DPI manufactures and sells parts, rather than just services; and 2) there is a likelihood of confusion between plaintiff's trademark and defendant's business name. Plaintiff specifically contends that defendant's counterclaim admits both actual confusion and an overall likelihood of confusion.

Defendant does not specifically respond to the admission allegation.

---

[3] Proof of likelihood of confusion is required for both trademark infringement under 15 U.S.C. § 1114, and false designation under 15 U.S.C. § 1125(a). *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 288 (6th Cir. 1997).

The Sixth Circuit considers the question of whether there is a likelihood of confusion a mixed question of fact and law: "Factual findings must be made with respect to the [eight] likelihood of confusion factors. . . . However, the further determination of whether a given set of foundational facts establishes a likelihood of confusion is a legal conclusion." *Homeowners Group*, *supra*, 931 F.2d at 1107.

"Judicial admissions of fact must be deliberate and clear." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.,* 508 F.3d 327, 336 (6th Cir. 2007). Factual statements in pleadings are generally binding on the parties. *See Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 549 (6th Cir. 2000) ("[Parties] are bound by admissions in their pleadings, and a party cannot create a factual issue by subsequently filing a conflicting affidavit."); *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir. 2000) ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them." (internal quotation omitted)).[4]

---

[4] In a state law trademark infringement case decided prior to the Lanham Act's enactment, the Sixth Circuit reversed a district court's finding that there was no *actual* confusion where "[appellee's] answer and counter-claim . . . charged that the use of appellant's name constituted an infringement of the trademark . . . and tends to confuse and deceive his customers." *Grocers Baking Co. v. Sigler*, 132 F.2d 498, 501 (6th Cir. 1942). The court noted that "[t]his constitutes a virtual admission of confusion."*Id.*

At least three courts outside the Sixth Circuit have also addressed the issue of whether a statement in a trademark counterclaim is an admission.

Two courts concluded that assertion of likelihood of confusion in a trademark counterclaim was properly construed as alternative pleading, rather than a judicial admission. *Goodall-Sanford, Inc. v. Landers Corp.*, 187 F.3d 639, 642 (C.C.P.A 1951); *Noasha LLC v. Nordict Group of Cos.*, 630 F. Supp. 2d 544, 550-51 (E.D. Pa. 2009). Both courts relied on the fact that the Federal Rules of Civil Procedure allow pleading inconsistent claims or defenses.

One court held that assertion of a trademark counterclaim asserting a likelihood of confusion constitutes a judicial admission precluding a party from contesting the issue of confusion. *Go Med. Indus. Pty, Ltd. v. Inmed Corp.*, 300 F. Supp. 2d 1297, 1315 (N.D. Ga. 2003).

8

Unlike admissions of fact, "legal conclusions are rarely considered to be binding judicial admissions." *Commercial Money Ctr.*, *supra*, 508 F.3d at 336.

Regarding the goods versus services dispute, defendant's counterclaim alleges:

7. DPI was formed as an Ohio corporation for the purpose of engaging in the business of coating, painting, assembling and *manufacturing truck parts, automotive parts*, and consumer parts.

.  .  .

9. DPI *markets and sells truck parts, automotive parts*, and consumer parts under its valuable trademark and trade name throughout the United States.

.  .  .

11. Said trademark/trade name has become for DPI a symbol of the quality of goods and services offered by DPI and has become recognized by the public to designate the highest quality of *truck parts, automotive parts*, and consumer parts which DPI *manufactures,* coats, paints and sells.

[Doc. 7, at 6] (emphasis added).

In its opposition, defendant contends that it "does not market and sell any goods." [Doc. 34, at 3]. Defendant made similar statements in its responses to plaintiff's interrogatories.

Defendant's counterclaim also states, with regard to actual confusion: "The use by Magna of DPI's trademark/trade name has caused confusion, mistake and deception of purchaser as to the source of origin of goods." [*Id.* at 9].

The counterclaim additionally states that "[c]ustomers are likely to purchase Magna's products bearing the trademark believing that such products are DPI's products." [*Id.* at 7].

Defendant's statements in its counterclaim about manufacturing parts and instances of actual confusion are factual assertions and thus admissions binding on defendant. *See Grocers Baking Co.*, *supra*, 132 F.3d at 501; *Hughes*, *supra*, 215 F.3d at 549; *Barnes*, *supra*, 201 F.3d at 829.[5]

---

[5] I note, however, that even assuming statements made in defendant's counterclaim are not admissions, defendant has not shown any genuine issue of material fact regarding the likelihood of confusion factors, and summary judgment is appropriate as discussed below.

Defendant's statement about likely confusion is, however, not an admission. Whether a "given set of foundational facts establishes a likelihood of confusion is a *legal conclusion*." *Homeowners Group*, *supra*, 931 F.2d at 1107 (emphasis added). Legal conclusions are rarely judicial admissions, and I decline to find such admission here. *Commercial Money Ctr.*, *supra*, 508 F.3d at 336.

## 2. Confusion

"The touchstone of liability [for trademark infringement] is whether the defendant's use of the disputed mark is likely to cause confusion among customers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores*, *supra*, 109 F.3d at 280.

The Sixth Circuit considers eight factors relevant to the likelihood of confusion inquiry: 1) the strength of the mark; 2) relatedness of the goods; 3) similarity of the marks; 4) evidence of actual confusion; 5) marketing channels used; 6) likely degree of purchaser care; 7) defendant's intent in selecting the mark; and 8) likelihood of expansion of the product lines. *Frisch's Rests., Inc. v. Elby's Big Boy*, 670 F.2d 642, 648 (6th Cir. 1982).

The eight factors "imply no mathematical precision, but are simply a guide to help determine whether confusion is likely" and "[t]he ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Homeowners Group*, *supra*, 931 F.2d at 1107.

Where likelihood of confusion is a "dispositive issue," "[t]o resist summary judgment . . . . a nonmoving party must establish, through pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, that there are genuine factual disputes concerning those of the *Frisch's* factors which may be material in the context of the specific case." *Id.*

10

### a. Strength of Mark

Plaintiff contends that its mark is strong because it has been used in the automotive industry for over ten years and "[t]he identity of [plaintiff] as the supplier of the products is particularly significant in the automotive market as quality and warranty claims are based on the source of goods as indicated by the trademark on the goods." [Doc. 32-1, at 7].

Defendant contends that the mark "is not particularly strong because it is merely descriptive." [Doc. 34, at 13].

The strength of a mark is a determination of the mark's distinctiveness and degree of recognition in the marketplace. *Daddy's Junky Music Stores*, *supra*, 109 F.3d at 280. A stronger mark is accorded greater protection and encroachment on a strong mark is deemed more likely to produce confusion among buyers. *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1117 (6th Cir. 1996).

"Trademarks are generally categorized as fanciful, arbitrary, suggestive or descriptive." *Little Caesar Enters., Inc. v. Pizza Caesar, Inc.*, 834 F.2d 568, 571 (6th Cir. 1987). "Fanciful and arbitrary marks are considered to be the 'strongest' or most distinctive marks. . . . 'Suggestive' and 'descriptive' marks either evoke some quality of the product (e.g., Easy Off, Skinvisible) or describe it directly ( e.g., Super Glue). Such marks are considered 'weaker,' and confusion is said to be less likely where weak marks are involved." *Id.*; *see also Champions Golf Club*, *supra*, 78 F.3d at 1116-17 ("A term for which trademark protection is claimed will fit somewhere in [a] spectrum which ranges through (1) generic or common descriptive and (2) merely descriptive to (3) suggestive and (4) arbitrary or fanciful." (internal quotations and citations omitted)).

11

An arbitrary trademark is not, however, inherently strong simply because it is arbitrary. It must also have broad customer recognition. *Homeowners Group*, *supra*, 931 F.2d at 1107 ("[The mark] may indeed be arbitrary and hence inherently distinctive, yet have little customer recognition or 'strength' in the market, or perhaps have high recognition which is limited to a particular product or market segment.").

I conclude that plaintiff's mark – DECOPLAS – is arbitrary. Plaintiff makes various automotive parts and the term DECOPLAS neither "evokes some quality of the product" nor "describes [the product] directly." *Little Caesar Enters.*, *supra*, 834 F.2d at 571. While defendant contends, in a conclusory manner, that the mark is "merely descriptive," it offers no argument, nor points to any evidence, in support of this.[6]

Plaintiff also provides evidence, in the form of an affidavit from the General Manager of Decoplas, S.A. de C.V., Shane Kavanagh, that: 1) the DECOPLAS trademark "is recognized, in at least the automotive industry, as an identifier for products produced by the Decoplas"; 2) "Decoplas is qualified as a supplier in the automotive industry and that this identity in the automotive industry is a valuable asset of Decoplas"; and 3) "a supplier must maintain its qualified status to sell parts to vehicle manufacturers." [Doc. 32-8, at 1].

Defendant provides no evidence to contest or undermine these statements.[7]

---

[6] Defendant asserted, in response to an interrogatory, that it chose the name "Deco Plas, Inc." because the company "decorates plastic parts." [Doc. 34-10, at 6]. Defendant has, however, not presented any evidence that consumers of its or plaintiff's products are likely to draw this connection.

[7] Defendant attempts to compare its sales figures to plaintiff's. As plaintiff points out, however, the total sales figures defendant offers for plaintiff's United States sales are calculated from *representative* invoices plaintiff provided during discovery, and are therefore not accurate *total* sales figures.

I therefore find that the mark, by virtue of its arbitrariness and recognition in the automotive industry, is a relatively strong one in that industry. This factor weighs in favor of finding a likelihood of confusion.

### b. Relatedness of Goods

Plaintiff contends the goods are similar; defendant argues they are not.

The Sixth Circuit evaluates the relatedness of goods by assigning the dispute in question to a place within a "tripartite system." *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 798 (6th Cir. 2004).

If the parties are in direct competition, "confusion is likely if the marks are sufficiently similar." *Id.* at 797.

If the goods are "somewhat related, but not competitive," the likelihood of confusion determination will turn on one of the other seven factors. *Id.*

If the products are unrelated, a likelihood of confusion is "highly unlikely." *Id.*

"Services and goods are related not because they coexist in the same broad industry, but are related if the services are marketed and consumed such that buyers are likely to believe that the services, similarly marked, come from the same source, or are somehow connected with or sponsored by a common company." *Daddy's Junky Music Stores*, *supra*, 109 F.3d at 283-84 (internal quotation omitted). "The question is, are the [goods or services] related so that they are likely to be connected in the mind of a prospective purchaser?" *Homeowners Group*, *supra*, 931 F.3d at 1109.

The Sixth Circuit has explained:

_____

Moreover, while defendant points out that its sales were much higher, it does not separate those sales in the automotive industry – the overlapping industry here – from its other sales, so it is unclear what relevance the comparison has here to the mark's recognition or strength.

> In a variety of other cases, we have held that bulk car wash products and car wash franchises, two slightly different types of oxygenating septic filters, and sit-down and carry-out pizza establishments are related enough to create a likelihood of confusion. However, infrared thermal-imaging devices and ear thermometers, and real-estate brokers and marketing services for real-estate brokers are not related enough to cause a likelihood of confusion.

*AutoZone*, *supra*, 373 F.3d at 797 (internal citations omitted).

Plaintiff's trademark covers "automotive parts, namely rocker panels, wheel flares, automotive exterior body facia, namely body side cladding and injected molded plastic bumper fascias." [Doc. 1-3].

Defendant provides services that "include production painting, laser etching, injection molding, sequencing, nanochrome application and vacuum metallization." [Doc. 34-10, at 2]. Defendant provides these services to both automotive and non-automotive manufacturers. *See* Doc. 34, at 8 ("DPI serviced Fortune 500 companies by coating, painting and performing other applicants upon plastic parts manufactured by others *for use on automobiles, trucks*, consumer electronic devices and appliances." (emphasis added)).

As discussed above, defendant also admitted – in its counterclaim – that it also manufactures and sells automotive parts.

Plaintiff has, however, not provided evidence that defendant's products and services are in direct competition, only that they have some overlap in customers within the automotive industry. *AutoZone*, *supra*, 373 F.3d at 797. Defendant, however, has not provided evidence that the goods and services are *unrelated*, rather it has only shown that it provides its services more broadly than the automotive industry.[8]

---

[8] I therefore note that even without considering defendant's counterclaim as an admission that defendant manufactures goods, the outcome on this factor would be the same.

14

I therefore find that defendant has created no genuine issue of material fact about the relatedness of the goods and the goods and services – because of the overlap in automotive customers – are "somewhat related, but not competitive." *Id.* The likelihood of confusion, therefore, must turn on the other factors. *Id.*

### c. Similarity of Marks

"Similarity of marks is a factor of considerable weight." *Daddy's Junky Music Stores*, *supra*, 109 F.3d at 283. In assessing similarity, a court should consider the "pronunciation, appearance, and verbal translation of conflicting marks." *Id.*; *AutoZone*, *supra*, 373 F.3d at 795-96. I "view marks in their entirety and focus on their overall impressions, not individual features." *AutoZone*, *supra*, 373 F.3d at 795.

The marks are facially similar – "DECOPLAS" and "Deco Plas" – and defendant does not dispute this. [Doc. 34, at 12] ("[I]t is abundantly clear that Magna's mark and DPI's name are similar.").

This factor thus points toward a likelihood of confusion.

### d. Actual Confusion

Plaintiff asserts that defendant has admitted actual confusion and describes one instance that it contends shows actual confusion. Defendant responds that there has been no actual confusion.

"Evidence of actual confusion is undoubtedly the best evidence of likelihood of confusion." *AutoZone*, *supra*, 373 F.3d at 798. "Due to the difficulty of securing evidence of actual confusion," however, "a lack of such evidence is rarely significant." *Daddy's Junky Music Stores*, *supra*, 109 F.3d at 284.

15

As discussed above, defendant admits actual confusion in its counterclaim: "The use by Magna of DPI's trademark/trade name has caused confusion, mistake and deception of purchaser as to the source of origin of goods." [Doc. 7, at 9].

This admission weighs in favor of finding a likelihood of confusion.[9]

### e. Marketing Channels

Plaintiff contends that both it and defendant sell to overlapping members of the automotive industry, and that the products sold by both companies are distributed throughout the United States.

Defendant contends that "Magna and DPI do not compete against each other, especially since Magna's mark is limited to a specific product that is sold to automotive manufacturers while DPI services a number of non-automotive manufacturers." [Doc. 34, at 13].

The "marketing channels used" factor examines "the parties' predominant customers and their marketing approaches." *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 636 (6th Cir. 2002). I examine "how and to whom the respective goods or services of the parties are sold." *Gen. Motors Corp. v. Keystone Auto. Indus., Inc.*, 453 F.3d 351, 357 (6th Cir. 2006) (internal quotation

---

[9] Plaintiff also contends that defendant represented, in a presentation to General Motors, that it supplied parts to Norplas Industries and had received the Norplas "Supplier of the Year" award, when in fact, Magna received that award for its DECOPLAS products.

The evidence plaintiff provides in support of this contention, however, does not show actual confusion over the DECOPLAS trademark. Plaintiff has not pointed to evidence showing that it received the Norplas award for DECOPLAS parts nor that General Motors was confused about anything related to the DECOPLAS trademark. Rather, the evidence submitted shows, at most, that General Motors was confused about whether defendant actually supplies parts to Norplas.

Assuming, *arguendo*, that defendant's counterclaim was not an admission, and looking only to this single alleged incident of confusion – I would conclude that plaintiff has not shown any evidence of actual confusion. This is insignificant, however, because the actual confusion factor is not dispositive in this case and the balance of factors favors plaintiff even if no consideration is given to defendant's admission.

16

marks omitted). Where parties have different customers and market goods or services in different ways, the likelihood of confusion decreases. *Therma-Scan*, *supra*, 295 F.3d at 636.

Defendant states that it is a "service-oriented company" and "uses the prior contacts of Michael Kreps to develop its trade face-to-face." [Doc. 34, at 9]. Defendant states that it "has spent less than $10,000.00 on marketing through DVD production and website hosting." [*Id.*].

Plaintiff has pointed to no evidence regarding its marketing approach.

The parties, however, agree that there is some overlap in their customers, namely General Motors and Volkswagen. I therefore find that this factor weighs in favor of a likelihood of confusion. *See Therma-Scan*, *supra*, 295 F.3d at 636; *Homeowner's Group*, *supra*, 931 F.2d at 1110.

### f. Purchaser Care

The parties agree that the purchasers of plaintiff's and defendant's products are sophisticated.

To assess the degree of purchaser care, courts typically use a "typical buyer exercising ordinary caution" standard. *Daddy's Junky Music Stores*, *supra*, 109 F.3d at 285. When potential buyers possess special expertise or are sophisticated purchasers of the goods at issue, a higher standard is appropriate, and the likelihood of confusion decreases. *Id.*

Plaintiff admits that "[t]he purchasers of Magna's goods qualify [as] suppliers with considerable care." [Doc. 32-1, at 10]. Defendant similarly argues that "[t]he relevant customers .  .  . employ the utmost care and sophistication identifying their vendors and the goods and products they purchase." [Doc. 34, at 13].

This factor thus weighs against finding a likelihood of confusion.

### g. Defendant's Intent

17

Plaintiff asserts that defendant "intended to create confusion when it adopted the Deco Plas name many years after Magna started using the DECOPLAS trademark." [Doc. 32-1, at 10]. Plaintiff contends this is so because defendant "did not make any attempt to determine if it had any right to use the Deco Plas name in connection with the sale of products and services." [*Id.* at 11].

Defendant contends that it had no intent to harm because it did not know of plaintiff's use of the mark until it received a cease and desist letter dated May 23, 2007.

A defendant's intent is relevant because "purposeful copying indicates that the alleged infringer . . . believes that his copying may divert some business from the senior user." *Daddy's Junky Music Stores*, *supra*, 109 F.3d at 286.

Intent "is an issue whose resolution may benefit only the cause of the senior user, not of an alleged infringer." *Id.* at 287. To paraphrase: innocent intent does not weigh in favor of the infringer.

Defendant has submitted an affidavit asserting that it was not aware "of the existence of DECOPLAS as a trade name, assumed name or trademark adopted for use by Magna" at the time defendant registered with the Ohio Secretary of State and the United States Treasury Department. [Doc. 34-11, at 3]. Plaintiff has submitted no evidence to the contrary.

I thus find that the defendant's intent does not weigh in favor of a likelihood of confusion here. *Daddy's Junky Music Stores, Inc.*, *supra*, 109 F.3d at 287.

### h. Likelihood of Expansion

The parties agree that expansion by both is likely. *See* Doc. 34, at 12 ("[B]oth corporations are likely to expand marketing of their products and services in states other than those states already listed."); Doc. 32-1 ("[B]oth companies have the potential to expand.").

18

A strong likelihood that "either party will expand [its] business to compete with the other or be marketed to the same consumers will weigh in favor of finding that the present use is infringing." *Homeowners Group*, *supra*, 931 F.3d at 1112.

"[A]n affirmative finding [of likelihood of expansion] will provide a strong indication that the parties' simultaneous use of the marks is likely to lead to confusion, while a negative finding is *not* a strong indication to the contrary." *Champions Golf Club*, *supra*, 78 F.3d at 1122.

Because the parties agree that expansion is likely, I find that this factor weighs in favor of a likelihood of confusion.

### i. Likelihood of Confusion Conclusion

Based on the above, I find that: 1) plaintiff's mark is strong by virtue of its lengthy use and recognition in the automotive market, and its arbitrariness; 2) defendant's mark is similar – virtually identical – to plaintiff's; 3) defendant admitted actual confusion; 4) the parties have overlapping customers in the automotive industry; and 4) both parties are likely to expand their businesses, thus increasing the likelihood of confusion in the future. The only factor favoring defendant is that the purchasers are sophisticated. I conclude that this is insufficient to overcome plaintiff's motion for summary judgment. Defendant has failed to create a genuine issue of material fact about any relevant likelihood of confusion factor. *Homeowner's Group*, *supra*, 931 F.2d at 1107.

In sum, consumers in the automobile industry could easily obtain goods or services from defendant believing those goods or services are affiliated with plaintiff and thus there is a likelihood of confusion.. *Homeowners Group*, *supra*, 931 F.2d at 1107 (noting that "[r]elevant consumers are," therefore, "likely to believe that the products or services offered by the parties are affiliated in some way").

## II. Defenses to Infringement

Defendant contends that plaintiff's failure to disclose this use in its trademark application constitutes fraud, so trademark registration is invalid. Defendant further argues that it the right to use the name "Deco Plas" in at least a limited geographical area, because it used the name beginning in February or March, 2005, before plaintiff registered the trademark.

As discussed above, registration of a trademark creates a rebuttable presumption of valid trademark ownership. The statutory presumption established by trademark registration, however, does not "preclude another person from proving any legal or equitable defense or defect, including those set forth in subsection (b) of this section, which might have been asserted if such mark had not been registered." 15 U.S.C. § 1115(a). The defenses in subsection (b) include:

> (1) That the registration  .   .   .  was obtained fraudulently;
>
> .   .   .
>
> (5) That the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to (A) the date of constructive use of the mark established pursuant to section 1057(c) of this title, (B) the registration of the mark under this chapter if the application for registration is filed before the effective date of the Trademark Law Revision Act of 1988, or (C) publication of the registered mark under subsection (c) of section 1062 of this title: *Provided*, *however*, That this defense or defect shall apply only for the area in which such continuous prior use is proved[.]

*Id.* § 1115(b).

### A. Fraud

Defendant first alleges that plaintiff's federal registration is invalid because plaintiff's application was fraudulent. Defendant alleges specifically that plaintiff knew of DPI's use of the name "Deco Plas" and failed to disclose this in its application.

20

A party may raise fraud defensively in civil litigation as a ground for cancellation in response to a claim of trademark infringement. 15 U.S.C. § 1115(b)(1); *see also Anheuser-Busch, Inc. v. Bavarian Brewing Co.*, 264 F.2d 88, 92 (6th Cir. 1959). To prevail on a defense of fraud, the alleged infringer must show false representation of a material fact, knowledge of its falsity and intent to induce reliance on the misrepresentation. *See Benton Prod. Enters., Inc. v. Motion Media*, 1997 WL 603412, *3 (6th Cir.) (unpublished disposition).[10]

A defendant must prove fraud by clear and convincing evidence. *E.g.*, *Advance Stores Co. Inc. v. Refinishing Specialties, Inc.*, 948 F. Supp. 643, 654 (W.D. Ky. 1996), *aff'd* 188 F.3d 408 (6th Cir. 1999); *accord Meineke Discount Muffler v. Jaynes*, 999 F.2d 120, 126 (5th Cir. 1993).

Because oaths and declarations submitted in connection with trademark registration are "phrased in terms of subjective belief," it is "extremely difficult to prove fraud so long as the signer has an honestly held, good faith belief" that it is the senior right holder. *Woodstock's Enters., Inc. v. Woodstock's Enters., Inc.*, 43 U.S.P.Q.2d 1440, 1444 (Trademark Tr. & App. Bd. 1997); *San Juan Prods., Inc. v. San Juan Pools of Kan., Inc.*, 849 F.2d 468, 472 (10th Cir. 1988); 6 McCarthy, *supra*, § 31:77 ("If applicant has a good faith belief that it is the senior user, then the oath cannot be fraudulent.").

"A prior user has no duty to disclose to the P[atent] [and] T[rademark] O[ffice] the subsequent use of others." 6 McCarthy, *supra*, § 31:77 (citing *Capital Speakers, Inc. v. Capital Speakers Club*, 41 U.S.P.Q.2d 1030 (Trademark Tr. & App. Bd. 1996)).

---

[10] A defendant who successfully raises a fraud defense succeeds only in cancelling the registration and thereby prevents the owner from relying on the benefits of registration. The trademark owner's common law trademark rights and rights under the Lanham Act, however, remain. 6 McCarthy, *supra*, § 31:60.

Defendant contends that plaintiff acted fraudulently when it signed the declaration form accompanying its trademark application. This form states:

> The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both  .  .  .  and that such wilful false statements may jeopardize the validity of this application or any resulting registration, declares that  .  .  .  he/she believes the Applicant to be the owner of the trademark sought to be registered, to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake  .  .  .  or to deceive."

[Doc. 34-7, at 3].

Defendant specifically contends this is fraud because: 1) two of plaintiff's employees attended defendant's grand opening in July, 2005; and 2) plaintiff and defendant had communicated by email, so plaintiff was therefore aware of defendant's use of the name "Deco Plas, Inc." in its domain name: "decoplasinc.com."[11] Defendant contends that it was thus fraud for plaintiff not to disclose its knowledge of DPI in plaintiff's trademark application.

The declaration plaintiff signed merely requires affirming that plaintiff believed it was the owner of the trademark sought to be registered and that, to the best of its knowledge, no other entity has the right to use the mark in commerce in a way likely to cause confusion. *See Woodstock's Enterprises*, *supra*, 43 U.S.P.Q.2d at 1444.

Even assuming that Simon's affidavit is sufficient to create a genuine issue of fact about whether plaintiff's employees attended the grand opening, that fact is not material. It at most

---

[11] To support these contentions, defendant offers only the conclusory statements in the affidavit of John J. Simon, a shareholder/owner and Vice President of DPI. Plaintiff responds that during discovery it requested that defendant: 1) identify plaintiff's employees defendant asserts attended the grand opening; and 2) produce the correspondence between plaintiff and defendant referencing defendant's name. Plaintiff asserts that defendant has not responded to these requests.

demonstrates that plaintiff knew about DPI's use of the name "Deco Plas, Inc." Defendant has provided no evidence that plaintiff lacked a good faith belief that it was the senior user. Plaintiff similarly had "no duty to disclose" subsequent use even if it were aware. 6 McCarthy, *supra*, § 31:77.

Defendant's allegation of fraud in the trademark application therefore fails.

### B. Good Faith Prior User Defense

Defendant contends also that it was the first to use the name "Deco Plas, Inc." in Ohio and "other state[s] where DPI has established priority of use of its name", and as such, it has common law priority over plaintiff. [Doc. 34, at 4]. Though not entirely clear, defendant appears to assert a "good faith prior user" defense.[12]

As the Sixth Circuit stated, "[t]ypically . . . it is the senior user who has the right to a federal registration, subject only to the prior common law rights of a junior user who has used the mark prior to the senior user's application for federal registration." *Allard II*, *supra*, 249 F.3d at 572.

A junior user who begins using a mark in a remote area between a senior user's first use and the time the senior user registers the mark may assert a "good faith prior user" or "innocent prior user" defense. *See* 15 U.S.C. § 1115(b)(5); *Champions Golf Club*, *supra*, 78 F.3d at 1123-24. To assert this defense, a party must show:

> (1) that the junior user . . . adopted its mark before the senior user's . . . registration under the Lanham Act, and without knowledge of the senior user's prior use; (2) that the trade area in which the junior user used the mark prior to the senior

---

[12] Defendant argues priority of use in common law terms, having assumed that the alleged fraud voids plaintiff's registration. Because I have found no fraud, and plaintiff's federal registration thus provides *prima facie* evidence of ownership, 15 U.S.C. § 1115(a); *Leelanau Wine Cellars*, *supra*, 502 F.3d at 513, I analyze defendant's argument as one for good faith prior use.

23

user's registration was limited in extent; and (3) that the junior user has continuously used the mark in the preregistration trade area.

*Champions Golf Club*, *supra*, 78 F.3d at 1124.

It is clear, moreover, that if the

senior user located in one part of the United States has achieved a nationwide recognition of its symbol, then the [innocent prior user] doctrine . . . is not available as a defense for a junior user anywhere in the nation. This is because the respective uses of the contested mark are not "remote." The . . . defense applies only where the senior user's mark *is not known* to customers *in a remote area* at the critical date of the junior user's first good-faith adoption and use. The junior user of a nationally known mark may claim that he did not know of the senior user's mark. But this is quite irrelevant if it is found that an appreciable number of customers in his area did know of the senior user's mark.

5 McCarthy, *supra*, § 26:16 (emphasis added) (internal footnote omitted); *see also Champions Golf Club*, *supra*, 78 F.3d at 1124 (quoting McCarthy).

Thus, "[m]ere geographic distance is not controlling where the reputation of the senior user's mark has been carried into a trade area prior to the junior user's adoption and use." McCarthy, *supra*, § 26:18.

Because this is an affirmative defense, the burden is on defendant to show its prior and continuous rights in a market that preempts the registrant's presumptive nationwide rights. 15 U.S.C. § 1115(b)(5); *Allard I*, *supra*, 146 F.3d at 356 (noting that federal registration "places on defendant the burden of showing their prior appropriation and continued use of . . . [the] mark"); *see also Emergency One, Inc. v. American Fire Eagle Engine Co., Inc.*, 332 F.3d 264, 272 (4th Cir. 2003) (noting that the good faith junior user defense is an affirmative defense under the Lanham Act); *Quill Corp. v. LeBlanc*, 654 F. Supp. 380, 385 (D.N.H. 1987) (noting that defendant bears the burden of proving its prior adoption without knowledge of the senior user's prior use, the continuous

24

use in that market from date prior to the senior user's registration, and the boundaries of that market).

Defendant contends that plaintiff's motion must be denied because "Magna applied for trademark registration after DPI registered its name with the Ohio Secretary of State and obtained a federal taxpayer identification number for the purpose of doing business in Ohio and other states," before plaintiff's federal registration. [Doc. 34, at 1-2].

This statement is factually correct: Defendant registered its name with the Ohio Secretary of State on March 7, 2005, and applied for a federal taxpayer identification number in February, 2005. Plaintiff applied for federal registration on August 12, 2005.

Defendant's argument, however, is incorrect. Neither state registration, *see Homeowner's Group*, *supra*, 931 F.2d at 1105; 3 McCarthy, *supra*, § 22:1 ("[S]tate registrations in most states have little legal significance other than serving as proof that on a certain date the registrant filed a claim that it was using a certain mark."), nor receipt of a federal taxpayer identification number confers trademark ownership. As discussed above, ownership is only established by actual use. *Homeowner's Group*, *supra*, 931 F.2d at 1105.

The evidence defendant submits of its use of the name "Deco Plas, Inc." is: 1) a February 11, 2005, Ohio contract with C.K. Technologies, Inc.; 2) its state registration; 3) its federal taxpayer identification form; and 4) an interrogatory answer stating that defendant's geographic sales area "includes Michigan, Ohio, Pennsylvania, Wisconsin, Indiana, Missouri, Kentucky, Tennessee, Illinois, Florida and Mexico." [Doc. 34-10, at 3].

Defendant fails to provide any information regarding *when* it sold services in these states or whether those sales were *continuous*. Defendant has therefore failed to provide evidence to satisfy

its burden of showing continuous prior use in a defined market. *See Champions Golf Club*, *supra*, 78 F.3d at 1124; *Quill Corp.*, *supra*, 654 F. Supp. at 385 (noting that the party asserting the good faith prior user defense must set forth the geographic extent of its prior customer base and continuous use in that market). Defendant has similarly failed to provide any evidence showing that its use of the name "Deco Plas, Inc." occurred in an area "remote" from plaintiff's use. *See Champions Golf Club*, *supra*, 78 F.3d at 1124; 5 McCarthy, *supra*, § 26:16.

Both of plaintiff's defenses thus fail.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT plaintiff's motion for partial summary judgment [Doc. 32] be, and the same hereby is granted. A pretrial conference is scheduled for June 14, 2010 at 3:30 p.m.


s/James G. Carr
James G. Carr
Chief Judge

26